GRAY *vs.* KOCH

***

## WILLIAM N. GRAY *vs.* MOSES KOCH.

Whether, upon a motion to dissolve an injunction, after answer, the complainant may read affidavits to contradict the answer,—*quere.*

Injunctions mandatory in substance, though in form merely prohibitory, may be granted.— But to justify this extraordinary process, a case of great urgency, to prevent irreparable injury, and clear of all doubt as to complainant's title, must be presented.

No property can be acquired in words or marks which do not denote the goods or property, or particular place of business of a person. *Held,* accordingly, that no person, by prior use, can acquire an exclusive right to the use of the words "Mammoth Wardrobe," as a sign or designation of a place where a large amount of clothing is kept.

Without a suggestion of falsehood or a suppression of truth, there can be no fraud.

*Saginaw Circuit.*

GRAY vs. KOCH.

*By the Court,* SUTHERLAND. J.—The parties to this suit are severally engaged in selling ready-made clothing in the city of East Saginaw. They occupy adjoining rooms in the same block, fronting on Genesee Street.

In March last, the complainant caused to be put up on the wall of the building, over the entrance to his store, the words " Mammoth Wardrobe " Below it, immediately above the door, is the complainant's name in large gilt letters. On the top of the building, in large letters, the complainant has kept for a longer time a sign in these words : " W. N. Gray's Great Wholesale and Retail Clothing Emporium ;" and on the windows on either side of the entrance, other words indicative of the complainant's business, including his name He has also advertised his said place of business and his trade therein, in the local newspapers and the Directory, as the " Mammoth Wardrobe," uniformly connecting with it his name and the number of his room.

Subsequently to complainant's adoption of the words " Mammoth Wardrobe," in his sign and advertisements, the defendant has painted the same words on an awning erected over the entrance to his store; and below them his name, and the number of his room.

The defendant's name, in large gilt letters, is also placed over his door ; but above the awning, and on the building, below the awning and near the entrance, is a card displaying " The Mammoth Wardrobe," and defendant's name.

The defendant has advertised in the same newspapers and Directory as complainant, but without mentioning the place of business as the " Mammoth Wardrobe."

The complainant's bill charges that the defendant erected the sign in question for the fraudulent purpose of obtaining, through deception, by means of the identity of name, a part of the custom and patronage attracted to complainant's store by his extensive advertising; which is denied by the defendant's answer, and the complainant insists that his prior adoption and use of that name, " Mammoth Wardrobe," gave him a special property in it, and an exclusive right to use it.

On the filing of the answer, the complainant moves for a preliminary injunction according to a prayer in his bill, pending his motion on the bill and answer, and affidavits made after the answer.—

The complainant, by way of relief, asks for a perpetual injunction restraining the defendant from using or vending his goods under the name and style of the "Mammoth Wardrobe," and from using any other trade mark or sign on his store substantially the same in meaning, and that the sign used by the defendant may be removed, or destroyed, or delivered to the complainant, for the costs he has been put to.

There is also a prayer for a preliminary injunction of the same restraining effect, and that the defendant may be required to remove immediately, from his awning, the sign in question.

The defendant objects to the reading of the affidavits. *Smyth vs. Smythe,* 1 *Swanst.,* 252, was read in support of the objection, in which it was held that if the plaintiff moves, after answer, for an injunction to stay waste or analogous injuries, he will not be allowed to read, on any point, affidavits filed after the answer in opposition.

But it was held in *Brydges vs. Stephens,* 6 *Mod.,* 279, that in such cases, if injunction has been obtained, the plaintiff, on a motion to dissolve it, is not precluded from reading affidavits as to acts of waste, against the answer, although filed after it. *Gibbs vs. Cole,* 3 *P. Wms.,* 255; 16 *Ves.,* 49; 1 *Price,* 303; 1 *Ves,* 543, 1 *John. Ch. R.,* 444; 1 *Smith Pr.,* 596, 600, are to the same effect. In *Sheriff vs. Barnard,* 8 *Sim.,* 161, the same principle is recognized, but it is held that if the facts of waste indirectly bear on the question of title, the affidavits will be rejected. The exclusion of affidavits to support the complainant's title rests also upon other authorities. 19 *Ves.,* 146, 153.

It is said by Mason, J., in *Florence vs. Bates,* 2 *Code R.* 160, that the same principle governs, whether the motion is by complainant after answer for an injunction or by defendant to dissolve it.

In *Poor vs. Carlton,* 3 *Sum.,* 80, a doubt is intimated whether affidavits after answer, contradicting it, will be excluded even on the question of title. 3 *Dan. Ch. Pr.,* 1827, note. Judge Story remarks in that case that, "The practice in America, has, I believe become more liberal than it is in England, and if it were necessary I should not hesitate to admit affidavits to contradict the answer for the purpose of continuing or *even granting an injunction,* where I perceived that without it irreparable mischief would arise." **He further** remarked that though there were circumstances in the case he

was considering which might make it unnecessary to assert so broad a doctrine,yet he preferred " to dispose of the case upon the general ground that the granting and dissolving injunctions in cases of irreparable mischief, rest in the sound discretion of the Court, whether applied for before or after answer, and that affidavits may, after an swer,be read by the plaintiff to support the injunction as well as by the defendant to repel it, although the answer contradicts the substantial facts of the bill, and the affidavits of the plaintiff are in contradiction of the answer."

The question is embarassed by too many conflicting adjudications to admit of any satisfactory answer without more time than I have now at my command. It is of great practical importance, but not necessary to be settled in this case as will be seen from the view taken of other points.

The defendant resists the motion on two grounds :

1. That the complainant asks for a writ requiring acts to be done—not a mere prohibition.

2. The complainant shows no right infringed by the defendant's use of the sign in question.

As to the first point, it is to be observed that the *gravamen* of the complainant's charge is, that the defendant has erected and continues a sign over the entrance to his store which had been so adopted by the complainant that it indicated the complainant's place of business, and the defendant's use of it drew away the complainant's customers. The complainant asks that the defendant's use of this sign may be interdicted until the hearing of the cause upon the merits. An injunction in the prohibitory form is asked, and also that it contain a mandate to do the act necessary to comply with the prohibition.

An injunction is a preventive remedy, and it has been said that if the injury has been already done, the writ can have no operation, for it can not be applied correlatively so as to remove it. *Att'y Gen. vs. N. I. R. R. & Tr. Co.*, 2 *Green*, 136. The case of the *People vs. Simonson*, 10 *Mich.*, 335, is an instance and a fair illustration of that principle. And in that case the Court say : " No court can by a preliminary *ex parte* order or process turn even a wrong doer out of possession." In *Murdock's* case, 2 *Bland*, 461, the Court held that the object of an injunction before answer, is to preserve all

things in their then condition, not to determine any right by antici-
pation, or to undo or restore anything when the essential·purpose of
the writ is restrained.   Precedents are not wanting for framing the
writ so as to require active measures to obey it.   In *North Eng.
Junc. Railway vs. Clarence Railway Co.*, 1 *Coll. R.*, 521, the juris-
diction was boldly asserted.   The Chancellor in deciding that case
said: " That injunctions mandatory in substance, though in form
merely prohibitory, have been and may be granted, is clear.   This
branch of its jurisdiction may be one not fit to be exercised without
particular caution, but certainly it is one fit and necessary to be exer-
cised under certain circumstances.   Under what circumstances it
should be exercised must be matter for judicial discretion in each sev-
eral case." *Spencer vs. London & Birmingham Railway Co.*, 8 *Sim.*,
193 ; *Robinson vs. Lord Byron,* 1 *Brons. C. C.*, 588 ; *Lane vs.
Newdigate,* 10 *Ves.*, 192 ; *Rankin vs. Haskissen,* 4 *Sim.*, 13 ;
*Whittaker vs. Howe,* 3 *Beav.*, 383 ; *Earl of Maxborough vs. Bowen,*
7 *Beav.*, 127 ; *Milligan vs. Mitchell,* 1 *Myl. & Keen,* 445.

But the opinion of the Lord Chancellor in *Blakemore vs. Gla-
morganshire Canal Nav. Co.,* 1 *Myl. R.*, 154, shows with what re-
luctance the Court will exercise the power.

To justify this extraordinary process, a case of great urgency,to
prevent irreparable injury, and clear of all doubt as to complainant's
title, must be presented.   This brings me to the second point made
by the defendant.   Is this such a case ?

A court of equity will relieve against acts of fraud, and in so do-
ing makes frequent use of its writ of injunction.   It has exercised
this jurisdiction in cases of a fraudulent use of a trade mark, by
which the goods of one person are by imposition sold as those of an-
other, or patronage of some sort lost by those who would receive it
but for the wrongs by which the patrons are unwittingly deviated.

The complainant has no right to appropriate a sign or symbol
which from the nature of the fact it is meant to signify, others may
employ with equal truth for the same purpose.   2 *Sandf. R.*, 599.
Names having a definite and established meaning in the language,
and which do not indicate ownership or origin, or something equiva-
lent, can not be appropriated by one so as to exclude a similar use
by others.   7 *Bos.*, 231.

No property can be acquired in words or marks which do not de-

note the goods or property, or particular place of business of a person.  17 *Barb.*, 608.

These are general principles that are supported by ample authority, and according to them no person by prior use can acquire an exclusive right to "Mammoth Wardrobe," as a sign or designation of a place where a large amount of clothing is kept.  As used by the defendant, the term truthfully characterizes his place of business — The words have a definite and established meaning in the language, and do not indicate any person as owner, and if used alone on the defendant's awning would not imply an intention on his part to represent his establishment as identical with that advertised by the complainant.

Without the suggestion of falsehood or a suppression of truth in words or acts, there can be no fraud.  But if the words were such that might be appropriated as a trade mark, by having first been arbitrarily applied by complainant, they not being an appropriate term according to general usage to describe such a place, still great doubt might be entertained whether the defendant has not by the addition of his name, number and other marks, so distinguished the designation of his establishment from that of the complainant, that though each is called the " Mammoth Wardrobe " they are not identical or so nearly so as to require close inspection to detect the difference.  *Partridge vs. Menck, Sandf. Ch. R.*, 622.  I do not see how any person could fail to recognize two establishments ; in other words it is difficult to believe that any customer attracted by the complainant's advertisements, and guided by the hints which they contain, and seeing his and defendant's stores, could make any mistake, or seeing only the defendant's would be deceived by it.

The motion must be denied with costs