Wolfe v. Barnett & Lion.

No. 2182.—UDOLPHO WOLFE *v.* BARNETT & LION.

The leading principle of the law of trade marks is, that the manufacturer or merchant who has produced or brought into market an article of use or consumption that has found favor with the public, and who, by affixing to it some name, device or symbol which serves to distinguish it as *his*, and to distinguish it from all others has furnished his individual guaranty of its value, shall receive the reward of his skill, and shall not be deprived thereof by infringement or imitation.

The words which compose a trade mark need not *each* be new. If the combination thereof be new and be descriptive of the origin of the goods and their ownership by the manufacturer who devises the mark, it will be unlawful for any other person to filch the combination or any important part thereof.

It is unlawful to put up imitation goods under the name of the real manufacturer, and the excuse that such an act was authorized by a person of the same name as that manufacturer, is absurd.

The fact that a trade mark label is copy-righted, but the date of entry is not given as required by the act of Congress, is of no importance in a suit in a State court for damages for imitation of a trade mark.

APPEAL from the Fourth District Court, parish of Orleans. *Théard, J.* *Henry J. Leovy* and *Semmes & Mott*, for plaintiff and appellant. *Hyams & Jonas*, for defendants and appellees.

This case was tried by a jury in the court below.

HOWE, J. The principal point involved in this case is one relating to the law of trade marks.

The plaintiff enjoined the defendants from preparing and selling or offering to sell any imitation of plaintiff's gin, or any article with or under the name or title of " Wolfe's Aromatic Schiedam Schnapps," or " Aromatic Schiedam Schnapps," or " Schiedam Schnapps," or from using any imitation of said name; and claimed damages for an alleged infringement by defendants of his rights as the manufacturer of this kind of gin and as the originator of the trade mark.

· The defendants answered by general and various special denials.

The cause was tried by a jury, who rendered a verdict, the effect of which, as confirmed by the judgment of the lower court, was to restrain the defendants only from the use of the word " Wolfe," and to throw upon the plaintiff the costs of the suit, his claim for damages being rejected. The plaintiff has appealed.

It appears from testimony uncontradicted and unimpeached that the plaintiff manufactures his gin in Holland and puts it up in bottles with uniform and peculiar marks and labels; that he has been engaged in business of this kind since 1851; that the name " Wolfe's Schiedam Aromatic Schnapps," impressed on the bottles and forming part of the labels, was devised by him to denote his goods thus made and sold; that in the trade this name was fully recognized as his trade mark; that the phrase " Schiedam Schnapps " was fully recognized as his peculiar property, in that it expressed the origin and ownership of his goods, and suggested to the general public, who had occasion to buy gin, the liquor made, imported and bottled by him; that the liquor

7

thus put up was really gin; that it had certain medicinal qualities
supposed by some to inhere in that kind of distilled spirits; and that
it had been extensively advertised and sold by plaintiff. It appears,
also, that the defendants had for some time been putting up and selling
a gin adulterated with water in bottles similar in appearance to those
of plaintiff, with labels which were merely colorable imitations of the
name, mark, devices and symbols of plaintiff, being headed "Wolfe's
Aromatic Schiedam Schnapps" and signed at the foot "Wolfe," instead
of the "Udolpho Wolfe" of the genuine label, and with words blown
on the sides of the bottles well calculated to mislead a purchaser who
did not make an unusually careful scrutiny. It also appears, without
any objection, that the defendants had imitated the goods of another
manufacturer in a similar way and only desisted upon being threatened
with suit.

It is not deemed necessary to review the numerous cases which have
been cited in the able briefs of counsel. Some are conflicting. Some
depends on technical differences between proceedings at law and in
equity. In others the plaintiff's case was not made out by as full
evidence as has been produced here. It is sufficient to say that in
view of the facts above recited we think the plaintiff entitled to a
perpetuation of the injunction originally issued and to damages, and
not merely to the very limited relief accorded by the verdict.

It is urged by defendants that the plaintiff's claim is prescribed by
the prescription of ten years, during which time, prior to the suit,
they claim that they have been engaged in the business complained of.
The prescription of one year, which is also pleaded, cuts off plaintiff
from any claim for damages for any period longer than twelve months
prior to citation, (Rev. C. C. 3536,) but we do not think there is any
force in the plea of ten years, or in the further point "that the defend-
ants have acquired as to all the world by uninterrupted possession for
ten years a full and complete title to the trade mark."

It is further urged that the plaintiff is neither the discoverer nor
first manufacturer of the article for which he claims the mark. We do
not understand the current of authority to be in favor of this proposi-
tion that this is necessary to his case. In the passage cited by defend-
ants from Upton on Trade Marks, page 24, that writer says:

"It seems to be the established doctrine that property in trade
marks, so far at least as they consist in the proper name of the thing
designated, or by long use have become known by that name, can exist
only in those who have the exclusive right to manufacture or to sell
the specific article, and so far as they consist in anything other than
the proper name of the thing which is susceptible of becoming a
legitimate trade mark, can exist only in the manufacturer or in those
entitled to represent the manufacturer."

Wolfe v. Barnett & Lion.

Assuming this statement to be accurate, it simply means that if the plaintiff's trade mark had consisted merely of the words "Holland Gin," it would be necessary for him to show an exclusive right to manufacture; but if the trade mark consists of something else, as the plaintiff's own name combined with a sonorous appellation well calculated to express origin and ownership as well as to attract the attention and impress the memory of buyers, it is only necessary that he should manufacture, without exclusive right, or represent a manufacturer. And we think the true rule, as applicable to this case, is correctly stated in the following passage from the same writer, page 97, to be this:

"That the honest, skillful and industrious manufacturer or enterprising merchant who has produced or brought into the market an article of use or consumption, that has found favor with the public, and who, by affixing to it some name, mark, device, or symbol, which serves to distinguish it *as his*, and to distinguish it from all others, has furnished his individual guaranty and assurance of the quality and integrity of the manufacture, shall receive the first reward of his honesty, skill, industry or enterprise; and shall in no manner and to no extent be deprived of the same by another, who to that end appropriates and applies to his productions the *same or a colorable* imitation of the *same name, mark, device* or *symbol*, so that the public are, *or may be*, deceived or misled into the purchase *of the productions of the one*, supposing them to be those of the *other*."

And see Stokes *v.* Landgroff, 17 Barbour 608; Howard *v.* Henriques, 3 Sandford 725; Brooklyn White Lead Company *v.* Massuy, 25 Barbour 416; Williams *v.* Johnson, 2 Bosworth 1.

It is in vain for defendants to urge that the several words which compose the name given by plaintiff to his goods are not new. His combination of these words is proved to have been new, and it is proved to indicate the origin and ownership of the liquor, and the defendants have no right to filch this combination, or any important part of it, in such way as to mislead the purchaser as to real origin and ownership. Upon this branch of the case the decision in Gout *v.* Alesslogn, 6 Beavan 69, is in point, where the defendants were restrained from using not merely the name of plaintiff, upon watches, but also any of the Turkish words and other devices first used by plaintiff to describe the merits of his watches. And see Clark *v.* Clark, 25 Barb. 76.

Still less can the defendants escape under the absurd excuse given in this testimony that they were putting up and selling the "imitation goods" under a written permit from a Mr. Wolfe, the father-in-law of one of them. It appears that this person died about four years before this action was begun, but, if he had lived, the use of his name under

this permit would only have made the defendants' attempt to deceive seem more deliberate and studied. Croft *v.* Day, 7 Beavan 84; Rodgers *v.* Nowill, 5 Man. Gr. and Scott 109. Nor is there any merit in the point that the plaintiff can not recover because his label, which contains the statement that it is copy-righted, does not also show the date at which the entry was made; nor in the point that he had no right, in any event to copy-right a label. This is not a suit to enjoin the infringement of a copy-right, the courts of the United States alone having jurisdiction of such cases. Conkling, 112. We presume the proof to show that in 1851 the plaintiff copy-righted his label in New York, was merely intended to show that he devised the label as early as that year.

We fix the damages in this case at $1500.

It is therefore ordered that the judgment appealed from be reversed and the verdict set aside; that the plaintiff have judgment against defendants, *in solido,* for the sum of fifteen hundred dollars; and that the preliminary injunction issued herein be perpetuated, with costs in both courts.