ELISHA G. SELCHOW et al., Respondents, *v.* JAMES S. BAKER et al., Appellants.

While, where a complaint shows no cause of action the granting of a preliminary injunction is an error of law, which may be reviewed in this court on appeal, the case must be very clear to justify the court in deciding the merits of the controversy on a mere motion; and, where a doubtful question of law arises on the complaint, the decision thereof should be deferred until a hearing of the case upon its merits.

Where a manufacturer has invented a new name, consisting either of a new word, or a word or words in common use, which he has applied for the first time to his own manufacture, or to an article manufactured for him, to distinguish it from those manufactured and sold by others, and the name so adopted is not generic or descriptive of the article, and is not used merely to denote grade or quality, but is arbitrary or fanciful, he is entitled

Statement of case.

to be protected in the use of that name as a trade-mark; and this, although it has become so generally known that it has been adopted by the public as the ordinary appellation of the article.

Plaintiffs were manufacturers of certain games or puzzles for children, which consisted of pictures of animals, birds or objects on paste-board, cut into strips or pieces, and the puzzle consisted of putting the pieces together so as to form the original picture. To distinguish these manufactures plaintiffs had given to them the names " Sliced animals," " Sliced birds," or " Sliced objects," according to the character of the picture, which names were placed upon the boxes containing the puzzles and upon the outside of the packages in which they were put up for sale, and the said articles had become well-known by the names thus given them. In an action to restrain defendants from using said names in connection with similar articles manufactured for and sold by them, *held*, that the names so given were capable of being appropriated as trademarks, and plaintiffs, having so appropriated them, were entitled to be protected in their use as such.

*Barnett* v. *Kubler* (Brown on Trade-Marks, 113, § 166) ; *W. & W. M. Co.* v. *Shakespear* (39 L. J. [N. S.] Chan. 36) ; *S. M. Co.* v. *Loog* (27 Alb L. J. 270), distinguished.

*Fetridge* v. *Wells* (4 Abb. Pr. 144), limited.

(Submitted May 1, 1883 ; decided June 19, 1883.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the city and county of New York, made November 9, 1882, which affirmed an order of Special Term, granting a preliminary injunction restraining defendants from using the names "Sliced Animals," "Sliced Birds," "Sliced Objects," in connection with certain games or puzzles.

Plaintiffs' complaint alleged in substance, among other things, that they were, and had been for many years, manufacturers and wholesale dealers in certain games and puzzles, to which they had given the names above stated, invented by them as trade-marks, to distinguish them from the manufactures of others, and which names were placed upon the boxes containing the puzzles and on the packages in which they were put up for sale ; under which names they had become widely known to the public. These puzzles consisted of pictures of animals, birds and different objects upon card-board, cut into strips or pieces, and the puzzle consisted in putting them together so as

Statement of case.

to form the complete picture.   In July, 1882, defendants began to sell similar articles, using the same names in connection therewith.   Plaintiffs asked to restrain such use.

*Charles M. Da Costa* and *William D. Guthrie* for appellants.   The granting of the temporary injunction order was without authority of law, and therefore such order is reviewable on appeal to this court.   (*Campbell* v. *Seaman,* 63 N. Y. 569 ; *McHenry* v. *Jewett,* 90 id. 58 ; *Allen* v. *Meyer,* 73 id. 1, 3 ; *Collins* v. *Collins,* 71 id. 269, 271 ; *People* v. *Common Council,* 79 id. 56, 61 ; *Paul* v. *Munger,* 47 id. 469, 473.) Unless protected by the operation of a statute, such as the Patent Acts, no one can have any exclusive property or right to manufacture and sell any article to the exclusion of others, although he may be the inventor thereof, and the first person to make and sell the same.   (*Caswell* v. *Davis,* 58 N. Y. 223 ; *Thomas* v. *Winchester,* 19 Pick. 214, 215.)   As Mr. Thompson had a right to manufacture and defendants to sell games like those invented and manufactured by plaintiffs, they had a right to use the names by which the games are exclusively known to the public.   (*Fetridge* v. *Wells,* 4 Abb. Pr. 144 ; *Taylor* v. *Gillies,* 59 N. Y. 331, 334 ; *Caswell* v. *Davis,* 58 id. 223, 234, 235 ; *Hegeman* v. *Hegeman,* 8 Daly, 1, 9, 10 ; *Thomson* v. *Winchester,* 19 Pick. 214, 216 ; *Canal Co.* v. *Clark,* 13 Wall. 323, 327 ; *Corwin* v. *Daly,* 7 Bosw. 222, 226 ; *Sherwood* v. *Andrews,* 5 Am. Law Reg. 588, 591 ; *Burton* v. *Stratton,* 12 Fed. Rep. 696, 700 ; *Marshall* v. *Pinkham,* 52 Wis. 572 ; *Wheeler & Wilson Manuf. Co.* v. *Shakespeare,* 39 L. J. [N. S.] Ch. 36 ; *L. M. Co.* v. *Nairm,* L. R., 7 Ch. Div. 834, 837 ; *Singer Manuf. Co.* v. *Long,* Alb. L. J., April 7, 1833, pp. 270, 274 ; *Van Beil* v. *Prescott,* 82 N. Y. 630 ; Browne on Trade-Marks, 151, § 219.)   The terms " Sliced Animals," " Sliced Birds," and " Sliced Objects," which the plaintiffs claim to appropriate as the trade-marks of the games in question, cannot legally be appropriated as such.   (*Canal Co.* v. *Clark,* 13 Wall. 311, 322 ; *Manuf. Co.* v. *Trainer,* 11 Otto, 51 ; *A. Manuf. Co.* v. *Spear,* 2 Sandf. 597 ; *Congress Spring Co.* v.

*High Rock Spring Co.*, 45 N. Y. 291, 295 ; *Newman* v. *Alvord*, 51 id. 189, 193 ; *Topham* v. *Cole*, 66 id. 69, 75 ; *Caswell* v. *Davis*, 58 id. 223, 233 ; *Van Beil* v. *Prescott*, 82 id. 630 ; *Zinter* v. *Kinney Tobacco Co.*, 12 Fed. Rep. 782; *Ayer* v. *Rushton*, 7 Daly, 9 ; Browne on Trade-Marks, §§ 134–136, 164, p. 43 ; § 66, p. 113 ; § 166, p. 141 ; Upton on Trade-Marks, 22, 25, 26 ; *Larabee* v. *Lewis*, 13 Ga. 270 ; 25 Alb. L. J. 203 ; *Roggett* v. *Findlater*, Eng. L. R., 17 Eq. 29 ; *Town* v. *Stetson*, 3 Daly, 53 ; Annales de la Prop. tome X, p. 320.)

*Frank R. Lawrence* and *Malcolm R. Lawrence* for respondents. The words applied by plaintiffs to their articles being arbitrary or fancy names they have acquired the exclusive right to use them for that purpose. (*Canal Co.* v. *Clark*, 13 Wall. 311 ; *Mfg. Co.* v. *Trainer*, 101 U. S. 51 ; *Hier* v. *Abrahams*, 82 N. Y. 519 ; *Gillett* v. *Esterbrook*, 48 id. 374 ; *Town* v. *Stetson*, 3 Daly, 53 ; *Smith* v. *Sixbury*, 25 Hun, 232 ; *Burnett* v. *Phalon*, 42 N. Y.   ; 3 Keyes, 594 ; *Davis* v. *Kendal*, 2 R. I. 566.)

RAPALLO, J. As a general rule this court will not review an order granting or refusing a temporary order of injunction which the court below had jurisdiction to grant. In the case of *McHenry* v. *Jewett* (90 N. Y. 58) this general rule was qualified to the extent of holding that where it clearly appears that the complaint shows no cause of action, a preliminary injunction is unauthorized, and the granting of it is an error of law which may be reviewed in this court on appeal.

The principle established in the case above cited does not apply where a doubtful question of law arises upon the complaint. The decision of such a question would be deferred until the hearing of the case upon its merits, and would not be summarily disposed of on a motion to dissolve the injunction. The case must be very clear to justify this court in deciding the merits of the controversy on a mere motion, and it would ordinarily decline, in a case presenting any serious question, to deprive either party of the privilege of having the merits of

his case deliberately heard and passed upon on appeal from the final judgment.

In the present case no question of fact arises upon the motion, and the only question presented is whether the words "sliced animals," "sliced birds," and "sliced objects," which the plaintiffs claim to have appropriated as a trade-mark, are capable of being so appropriated. This is a question of law, and although it is not so simple a question, and its solution is not so clear that we should, against the objection of either party, decide it on this appeal, yet, as both parties unite in requesting such a decision, in order to save the delay and expense of going through the forms of a trial and successive appeals from the judgment to the General Term, and to this court, for the purpose of ultimately presenting the same question, we have concluded to determine it now, and thus dispose of the controversy.

The plaintiffs have no exclusive right to manufacture or vend the articles to which they have attached the names, but they have the right to attach to the articles which they may manufacture any distinctive name, and to appropriate it as a trademark, by which such articles may be distinguished from similar articles manufactured by other persons, provided the name so selected by them is original, and has never before been applied to such articles, and provided, also, that it is an arbitrary or fanciful name, not in itself descriptive of the article. The reason for not permitting names, descriptive of the article or its component parts, to be appropriated as trade-marks is that inasmuch as all persons have an equal right to produce and vend similar articles, they also have the right to properly describe them, and to use any appropriate language or words for that purpose, and no person can appropriate to himself exclusively any word or expression, properly descriptive of the article, its qualities, ingredients or characteristics, and thus limit other persons in the use of language appropriate to the description of their manufactures, the right to the use of such language being common to all. But a name which does not, in itself, indicate what the article is, or what are its qualities or

component parts, but which is invented or adopted by a manu-
facturer solely for the purpose of distinguishing his products,
and whose exclusive appropriation to that purpose in no way
restricts others from properly describing similar articles pro-
duced by them, may be appropriated as a trade-mark and pro-
tected as such.

Whether a name claimed as a trade-mark is subject to the
objection of being descriptive, or whether it is an arbitrary or
fancy name, must depend upon the circumstances of each case
as it arises. Several instances are cited upon the brief of
counsel, of names which have been sustained as valid trade-
marks, and others of names which have been rejected as de-
scriptive. In *Burnett* v. *Phalon* (3 Keyes, 594), the word
" Cocoaine " as applied to a hair wash compounded from cocoa-
nut oil and other ingredients, was upheld as a trade-mark. So
with " Magnetic Balm," as applied to a medical preparation
of which magnetism or electricity was not in fact one of the
component parts (*Smith* v. *Sixbury*, 25 Hun, 232), while on
the other hand various names are cited from Browne on Trade-
Marks (134, 136 and 164), which have been rejected as descrip-
tive. A cursory reading of these names conveys at once to the
mind an idea of the article to which they refer. A case which
is claimed by the learned counsel for the appellants to be very
much in point, is cited from Browne on Trade-Marks (p. 113,
§ 166), viz.: *Barnett* v. *Kubler*, decided in the French courts,
and I agree that that case is a fair illustration of the principle
under discussion. It related to the toy known as " The Ser-
pent of Pharaoh," a chemical preparation, sold under the form
of a little cone, which being set on fire develops into the form
of a real serpent, with its length, movements and color. The
infringement charged consisted of the application to a similar
article manufactured by the defendant, of the name " Magic
Serpent," and this use of the word " serpent " was complained
of, and it was held that the plaintiff had no right to the ex-
clusive appropriation of it. It is plain that the article was in
fact the imitation of a serpent, or the production of an artifi-
cial serpent, and the defendant having the right to manufac-

ture the article, it would have been a clear invasion of his rights to prohibit him from using a name so appropriate and necessary to its description. The words "Magic Serpent," or "Artificial Serpent," were as accurate a description of the toy as could well be devised. A comparison of this case with that of the "Pearls of Ether," as applied to ether pills, covered with a silvery coating which made them resemble pearls, exemplifies the distinction. This was held by the French courts to be a good trade-mark and not descriptive. The word "Pearls," as applied to pills, was an arbitrary and fancy name, whose exclusive appropriation abridged no one's right to the use of language in describing pills. If in the case of the "Serpent of Pharaoh," the infringement had consisted in the piracy of the word "Pharaoh," as applied to the toy, it could hardly have been said that the plaintiff was not entitled to protection, if the word had been adopted for the purpose of distinguishing the plaintiff's manufacture.

In the present case the infringement complained of consists in the unauthorized use of the words "Sliced Animals," etc., which had been appropriated by the plaintiffs as the name of the toy. This word was not, in our opinion, descriptive of the article. It would not convey to a person who had never seen the toy, and who did not know what it was, any idea of its character, nor would it be an appropriate term to be used by a person desiring to give a correct or any description of it. It does not even indicate that pictures of any kind are referred to, and none of the objects are in fact sliced. The name had been invented by the plaintiffs and had never before been applied to the toy, although toys of a similar character had been in use. The plaintiffs were the only persons using it, and it had become the distinguishing mark by which their manufactures had become known and were dealt in in the market. It is difficult to conceive what motive the defendants could have had in adopting it, other than to appropriate to themselves the benefit of the popularity which the plaintiffs had obtained for their products, by advertising and other means, and to divert

their trade to themselves.    We think the word adopted by the plaintiffs constitutes a valid trade-mark.

It cannot be true as a general proposition, as contended on the part of the defendants, that when a manufacturer has given to his products a new name invented by himself for the purpose of distinguishing them as his, and the article becomes generally known to the trade and to the public by that name, the name becomes public property and every one has a right to use it.    That proposition can be sustained only in respect to names which are descriptive of the article and incapable of being appropriated as trade-marks.    The value of a trademark consists in its becoming known to the trade as the mark of the manufacturer who has invented or adopted it, and in being known to the public as the name of an article which has met with popular favor.    It cannot be that the very circumstances which give it value, operate at the same time to destroy it.

Several cases and *dicta* are cited by the learned counsel, upon which he predicates his proposition.    These cases depend upon various considerations.    Some of them refer to names which are descriptive of the article, and hold that where such a name is given to a new article it becomes its proper appellation, and all who have a right to manufacture and sell the article have the right to designate it by its appropriate name.    Other decisions are applicable where an article has been patented and has become generally known by the name of the patent or of the patentees.    The name by which it is thus known is not a trade-mark, indicating that the article is manufactured by any particular person.    The article may be manufactured by any one who may, as assignee or licensee, be entitled to use the patent, and it indicates that the article is made under or on the system of such patent, and any person making the article according to such patent may designate it by its proper name. And when the patent expires, or in foreign countries where the patent has no force, there is no piracy in making or selling the article under the name by which it has become generally known.    This name has become the proper description of the article, as indicating that it is made according to the patented

invention, and is not the trade-mark of any particular manu-
facturer. The patentee relies for his protection upon his pat-
ent, and cannot, by calling the name of his patent a trade-
mark, protect his monopoly after the patent has expired, or
where it has no force. Such are the cases of *Wheeler & Wil-
son Manuf. Co.* v. *Shakespear* (39 L. J. [N. S.] Chanc. 36),
*Singer Manuf. Co.* v. *Loog* (27 Alb. Law Jour. 270).

In the case of the Singer Manuf. Co. the grounds of the
decision are very distinctly stated in the opinion of the Lord
Chancellor. Referring to the plaintiff's allegations (which
were, that the defendant, by representing sewing machines
sold by him as "Singer" machines, had endeavored to obtain,
and succeeded in obtaining for the machines so sold by him,
some of the reputation attaching to the plaintiff's manufactures,
and had induced or, unless restrained, would induce purchasers
of his machines to believe that they were in fact machines of
plaintiff's manufacture) the Lord Chancellor observes that if
the case so stated were established, there could be no doubt of
the plaintiff's right to relief upon the ordinary principles appli-
cable to trade-marks, but that the case was not of that descrip-
tion, but analogous to that of *Wheeler & Wilson Manufactur-
ing Co.* v. *Shakespear* (39 L. J. [N. S.] Ch. 36), in which it was
held that the name Wheeler & Wilson had come to signify in
the trade, not the particular manufacture of Messrs. Wheeler
& Wilson, or of the Wheeler & Wilson Co., but the kind of
machine which they made, the manufacture of which was *pub-
lici juris.*

Judge DUER, in *Fetridge* v. *Wells* (4 Abb. Pr. 144), uses
language with reference to the name "Balm of a Thousand
Flowers," which, if adopted without qualification, would sus-
tain the defendants' proposition, but on the other hand, Judge
HOFFMAN, with reference to the same name in *Fetridge* v.
*Merchant* (4 Abb. Pr. 156), dissents from the views of Judge
DUER. The true limitation upon the right to adopt a new
name for an article as a trade-mark is, I think, pointed out in
the case of the *Linoleum Manufacturing Co.* v. *Nairn*
(L. R., 7 Ch. Div. 834). In that case the plaintiff had

patented a floor covering of oil cloth which it named "lino-leum," and after the expiration of its patent, endeavored to restrain the defendant from using the same word as the name of the goods made by him.   The word is stated in the case to signify "solidified oil" and this was the composition of the article.   The court refused an injunction, holding that the name was appropriate to describe the article, and that, hav- ing the right to make the article, the defendant had the right to use an appropriate name, and suggests that he was not bound to invent a new name for it.   The court distinguishes the case from that of *Braham* v. *Bustard* (1 Hem. & Mil. 447), where the name "Excelsior White Soft Soap Co." was sustained as a valid trade-mark, by saying that the word "Excelsior" having no relation to the subject-matter, and being a purely fancy name, could lawfully be appropriated, but that, in the case of linoleum, the plaintiffs, having invented a new subject-matter, used merely the name distinguishing the *subject-matter*, but did not use a name distinguishing the sub-ject-matter *as made by them*, from the same subject-matter as made by other persons.

In the case now before us the proofs were quite sufficient to justify the court in holding that the plaintiffs were the first to introduce the article in the market, that they gave it the name in conjunction with their own name and address, and that by advertising and a long course of dealing, the article had be-come widely known and the plaintiffs had been identified with it as its manufacturers.

The right to give a new name to an article and adopt it as a trade-mark has been questioned in some cases but recognized in others in this State.   The general rule is laid down in *Canal Co.* v. *Clark* (13 Wall. 322), as follows :   "The office of a trade-mark is to point out distinctively the origin or owner-ship of the article to which it is affixed, or give notice who was the producer.   This may in many cases be done by a *name*, a mark, or a device, well known but not previously applied to the same article."   A trade-mark may consist of a name if adopted by a manufacturer to distinguish his goods from those

manufactured by others. Judge INGRAM, in *Wolfe* v. *Goulard* (18 How. Pr. 64), observes that : " When a person forms a new word to designate an article made by him, which has never been used before, he may obtain such a right to that name as to entitle him to the sole use of it as against others who attempt to use it for a similar article." The act to punish fraud in the use of trade-marks (Laws of 1862, chap. 306, § 4) makes it a misdemeanor, with intent to deceive to knowingly affix to any goods, etc., any label-mark, etc., which shall designate such goods, etc., either wholly or in part by *a word or words*, wholly or in part the same to the eye or in sound to the ear, as the word or words, or some of them, used by any other person to designate goods, etc., manufactured or prepared by him, and the point that the word adopted as a trade-mark may be a name given by the manufacturer to the article itself and that by which it becomes known to the trade, is authoritatively denied by this court in the case of *Burnett* v. *Phalon* (3 Keyes, 594). (See, also, *Davis* v. *Kendall*, 2 R. I. 566 ; *Williams* v. *Johnson*, 2 Bosw. 1 ; *Taylor* v. *Carpenter*, " Persian Thread," 2 Sandf. Ch. 603 ; names registered as trade-marks under act of July 8, 1870, in Browne on Trade-Marks, 601–639.)

Our conclusion is, that where a manufacturer has invented a new name, consisting either of a new word, or a word or words in common use which he has applied for the first time to his own manufacture or to an article manufactured for him, to distinguish it from those manufactured and sold by others, and the name thus adopted is not generic or descriptive of the article, its qualities, ingredients or characteristics, but is arbitrary or fanciful and is not used merely to denote grade or quality, he is entitled to be protected in the use of that name, notwithstanding that it has become so generally known that it has been adopted by the public as the ordinary appellation of the article.

The order should be affirmed, with costs

All concur.

Order affirmed.